THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| RICHARD N.,[1] | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 23 C 6338 |
| v. | ) | |
| | ) | Magistrate Judge Laura K. McNally |
| FRANK BISIGNANO, | ) | |
| | ) | |
| Commissioner of Social Security,[2] | ) | |
| | ) | |
| Defendant. | ) | |

ORDER[3]

Before the Court is Plaintiff Richard N.'s memorandum in support of summary

judgment, asking the Court to remand the Administrative Law Judge's ("ALJ") decision

denying his application for disability benefits (Dkt. 10: Pl. Mem. in Support of Summ. J.:

"Pl. Mem.") and Defendant's motion and memorandum in support of summary

---

[1] The Court in this order is referring to Plaintiff by his first name and first initial of his last name in compliance with Internal Operating Procedure No. 22 of this Court.

[2] The Court substitutes Frank Bisignano for his predecessor as the proper defendant in this action pursuant to Federal Rule of Civil Procedure 25(d) (a public officer's successor is automatically substituted as a party).

[3] On September 5, 2023, by consent of the parties and pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, this case was reassigned to the magistrate judge for all proceedings, including entry of final judgment. (Dkt. 6.)

judgment (Dkt. 14: Def. Mot. for Summ. J.; Dkt. 15: Def. Mem. in Support of Summ. J.:

"Resp.")

## I.    Procedural History

This case has a complicated procedural history. As relevant here, Plaintiff

applied for Disability Insurance Benefits ("DIB") and Supplemental Security Income

("SSI") on July 31, 2014, alleging disability beginning March 5, 2013. (R. 425-32.) After a

hearing, on January 17, 2017 ALJ Diane Davis issued a Partially Favorable decision

finding Plaintiff disabled, and entitled to SSI beginning August 12, 2015, and Plaintiff

appealed the part of the decision finding him able to work between March 5, 2013 and

August 11, 2015.[4] The Appeals Council upheld the finding that Plaintiff was disabled as

of August 12, 2015 and remanded the remainder of the decision for a supplemental

hearing on whether Plaintiff was also disabled from March 5, 2013 to August 11, 2015.

(R. 260-63.)

After the supplemental hearing, the ALJ again found Plaintiff able to work

between March 5, 2013 to August 11, 2015 and Plaintiff again appealed. (R. 264-86.) This

time, the district court remanded for further consideration of Plaintiff's subjective

statements about his musculoskeletal pain. (R. 1463.) Pursuant to that remand, on

February 27, 2023 ALJ Janet Akers held a hearing where she heard testimony from

---

[4] Plaintiff's date last insured was September 30, 2014. Therefore, he had to establish disability
before that date to be entitled to disability insurance benefits.

2

Plaintiff, who was represented by an attorney, and a vocational expert. (R. 1412-35.) On May 3, 2023, the ALJ issued an opinion finding that based on his application for DIB, Plaintiff was not disabled from March 5, 2013 through September 30, 2014 and based on his application for SSI, Plaintiff was not disabled from March 5, 2013 through August 11, 2015. (R. 1386-1402.)

II.     **ALJ Decision**

The ALJ applied the Social Security Administration's five-step sequential evaluation process to Plaintiff's claims. At Step One the ALJ found that Plaintiff had not engaged in substantial gainful activity from March 5, 2013 through August 11, 2015. (R. 1389.) At Step Two, the ALJ found that Plaintiff had the severe impairments of ulcerative colitis, Crohn's disease, irritable bowel syndrome (together, "inflammatory bowel disease"), degenerative disc disease of the lumbar spine, degenerative joint disease of the left knee, and peripheral neuropathy. (*Id.*) At Step Three, the ALJ found that none of Plaintiff's impairments met a Listing. (R. 1392.) Before Step Four, the ALJ determined that from March 5, 2013 through August 11, 2015, Plaintiff had the residual functional capacity ("RFC") to perform light work except could have frequently balanced, stooped, and climbed ramps and stairs. (R. 1393.) He could have occasionally knelt, crouched, and crawled, but could have never climbed ladders, ropes, or scaffolds. (*Id.*) Finally, he could have occasionally tolerated work with vibrating equipment and needed to avoid extreme cold and heat. (*Id.*)

3

At Step Four, the ALJ determined Plaintiff could not perform his past relevant work as a sheet metal worker, metal fabricator helper, and material handler. (R. 1401.) At Step Five the ALJ found that significant jobs existed in the national economy that Plaintiff could perform, including housekeeper, folder, and inspector. (R. 1402.) Therefore, the ALJ found that Plaintiff was not disabled from March 5, 2013 through August 11, 2015. (*Id.*)

III.    **Legal Standard**

Under the Act, a person is disabled if he has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a).

To determine whether a plaintiff is disabled, the ALJ considers the following five questions, known as "steps," in order: (1) Is the plaintiff presently unemployed? (2) Does the plaintiff have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the plaintiff unable to perform his former occupation? and (5) Is the plaintiff unable to perform any other work? 20 C.F.R. § 404.1520(a)(4).

An affirmative answer at either Step Three or Step Five leads to a finding that the plaintiff is disabled. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir.

4

1992). A negative answer at any step other than at Step Three precludes a finding of disability. *Id.* The plaintiff bears the burden of proof at Steps One to Four. *Id.* Once the plaintiff shows an inability to perform past work, the burden then shifts to the Commissioner to show the plaintiff's ability to engage in other work that exists in significant numbers in the national economy. *Id.*

The Court does not "merely rubber stamp the ALJ's decision on judicial review." *Prill v. Kijakazi*, 23 F.4th 738, 746 (7th Cir. 2022). An ALJ's decision will be affirmed if it is supported by "substantial evidence," which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019). "[T]he threshold for such evidentiary sufficiency is not high." *Id*. ALJs are "subject to only the most minimal of articulation requirements" and "need not address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning." *Warnell v. O'Malley*, 97 F.4th 1050, 1053 (7th Cir. 2024). "All we require is that ALJs provide an explanation for how the evidence leads to their conclusions that is sufficient to allow us, as a reviewing court, to assess the validity of the agency's ultimate findings and afford the appellant meaningful judicial review." *Id*. at 1054.

The Seventh Circuit added that "[a]t times, we have put this in the shorthand terms of saying an ALJ needs to provide a 'logical bridge from the evidence to his conclusion.'" *Id*. (citation omitted). The Seventh Circuit has further clarified that district

courts, on review of ALJ decisions in Social Security appeals, are subject to a similar minimal articulation requirement: "A district (or magistrate) judge need only supply the parties . . . with enough information to follow the material reasoning underpinning a decision." *Morales v. O'Malley*, 103 F.4th 469, 471 (7th Cir. 2024). The district court's review of the ALJ's opinion "will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute its judgment for the ALJ's determination." *Chavez v. O'Malley*, 96 F.4th 1016, 1021 (7th Cir. 2024) (internal quotations omitted).

## IV.    Analysis

Plaintiff's primary argument is that the ALJ did not properly explain why she omitted any limitations related to Plaintiff's inflammatory bowel disease from the RFC determination. (Pl. Mem. at 4.)  Specifically, Plaintiff contends that the ALJ erred in her consideration of evidence supporting a need for additional and unscheduled bathroom breaks during the workday. (Pl. Mem. at 6.) The Court disagrees, and finds that the ALJ's determinations are supported by substantial evidence. Therefore, it affirms the ALJ's decision.

A.      Medical History

Plaintiff's medical history and treatment for inflammatory bowel disease is well-documented in this Court's prior ruling. (R. 1455-88.) Plaintiff's medical history from before March 5, 2013 included complaints of abdominal pain and diarrhea 7-10 times per day and bloody stools for two weeks. (R. 1466-67, *citing* R. 668-683.) He was diagnosed with irritable bowel syndrome, Crohn's disease, and ulcerative colitis, and prescribed prednisone, Remicade, Asacol, and azathioprine. (*Id., citing* R. 744-45.) Plaintiff testified at the 2023 hearing that during a "good day" during the time period between March 5, 2013 and August 11, 2015, he would go to the bathroom 10 to 20 times for 5 to 15 minutes each time. (R. 1417.) On a "bad day" he would go to the bathroom anywhere from 15 to 30 times. (*Id.*) Plaintiff further testified that he wore adult diapers because he had daily bowel accidents requiring showers for cleanup. (R. 1418.)

B.      The ALJ Supported With Substantial Evidence the Omission of Bowel Disease-Related Limitations from the RFC.

The ALJ considered both objective and subjective evidence before determining that during the relevant time period, Plaintiff could perform light work with additional limitations. Plaintiff does not contend that the limitations the ALJ assessed to account for his degenerative disc disease and degenerative joint disease were inadequate. Instead, he argues that because the ALJ found that he had three severe gastrointestinal conditions, the ALJ should have also included limitations related to his inflammatory bowel disease in the RFC. (Pl. Mem. at 5.) Specifically, he says that the ALJ failed to

7

provide a supported rationale for concluding Plaintiff's severe gastrointestinal impairments did not require additional bathroom breaks during the workday. (*Id*.)

As an initial matter, Plaintiff is incorrect in suggesting that the ALJ was obligated to include in the RFC a limitation designed to accommodate his gastrointestinal impairments simply because the ALJ found them to be severe. (Reply at 5.) *Michael J. M. v. King*, No. 1:22-CV-3946, 2025 WL 446252, at *3 (N.D. Ill. Feb. 10, 2025), *citing Sampson v. Kijakazi*, No. 21 C 318, 2022 WL 1135037, at *7 (E.D. Wis. Apr. 18, 2022) ("ALJ was not <u>required</u> to include any particular limitations (e.g., extra bathroom breaks) just because he found plaintiff's Crohn's disease to be a severe impairment." (underlining in original)). Plaintiff offers no authority for the proposition that an ALJ must accommodate every severe impairment with a limitation in the RFC and the Court has found none. Instead, the ALJ was only required to support the RFC determination with substantial evidence.

In this case, substantial evidence supports the RFC, including the ALJ's decision to omit any limitations related to Plaintiff's inflammatory bowel disease. *See, e.g., Lisa C. v. Kijakazi*, No. 20-CV-5173, 2023 WL 3436400, at *8–9 (N.D. Ill. May 12, 2023) (ALJ's decision not to include a limitation related to bathroom breaks supported by record as a whole).[5]

---

[5] The Court recognizes authority cited by Plaintiff finding reversible error when an ALJ did not properly accommodate Plaintiff's gastrointestinal disease in the RFC. *See Jacob D. v. Kijakazi*, No. 20-CV-0554, 2021 WL 3674610, at *3 (N.D. Ill. Aug. 19, 2021) (collecting cases). In *Jacob D.* and

First, the ALJ explained that she gave some weight to the opinions of the two state agency doctors who opined that Plaintiff could perform light work with additional limitations. (R. 1398.) The doctors specifically considered record evidence of Plaintiff's inflammatory bowel disease and treatment. That evidence included a letter written by Plaintiff's internist, Timothy Brandt, M.D., in September 2014 that described Plaintiff's inflammatory bowel disease as including frequent and unpredictable diarrhea, which would restrict him from regular employment. (R. 830.) Despite this evidence, neither state agency doctor concluded that Plaintiff required any bathroom break limitations during the relevant time period. (R. 152-56, 173-79.)

Plaintiff does not address the state agency medical opinions at all in his memorandum in support of remand or his reply brief. Therefore, he has waived any objection to the ALJ's reliance on the opinions in support of the RFC. *Bollas v. Astrue*, 694 F. Supp. 2d 978, 990 (N.D. Ill. 2010), *citing Jones v. Shalala,* 10 F.3d 522, 525 n. 4 (7th Cir.1993) (Issues not raised in a claimant's initial brief are generally waived for purposes of review.)

The ALJ also evaluated the objective medical evidence concerning Plaintiff's inflammatory bowel disease during the relevant period. For example, the ALJ discussed

---

similar cases the ALJ did not adequately develop the record regarding the claimant's need for bathroom breaks or otherwise ignored relevant evidence. In this case, the ALJ fully considered the medical record concerning Plaintiff's inflammatory bowel disease and supported with substantial evidence the absence of limitations in the RFC.

medical examinations after Plaintiff began treatment in 2013 and into the first half of 2014, noting that Plaintiff's abdominal examinations were normal, with no abdominal pain, distention, or blood in his stool. (R. 1394.)

The ALJ acknowledged that Plaintiff complained of abdominal pain and was diagnosed with an umbilical hernia in June 2014, and he complained of an episode of diarrhea in July 2014. (*Id.*) In September 2014, just prior to his date last insured, Plaintiff denied having bowel or bladder dysfunction. (R. 1395.) Plaintiff did not complain about having frequent bowel movements until November 10, 2014. (*Id.*) Plaintiff had hernia surgery in January 2015 and by February 2015 was reporting he had no abdominal pain. (R. 1395.) Although Plaintiff again complained of abdominal pain in June 2015, he was negative for nausea, vomiting, constipation, excessive urination or excessive hunger. (*Id.*) Additionally, while Plaintiff testified at the August 2018 hearing about the frequency of his bowel accidents, including having three accidents the day before the hearing (R. 26-27), such allegations are absent from the record for the relevant period.

The ALJ also discussed a February 2018 letter from a nurse who had treated Plaintiff during the relevant period for ailments unrelated to his inflammatory bowel disease. Ursula Garcia, APN, responded to a letter from claimant's representative seeking details about why Plaintiff had been unable to work since prior to his date last insured. (R. 1399, *citing* R. 1257-61.) Nurse Garcia opined that Plaintiff would not be able to work an eight-hour day without interruption because of frequent bathroom use

10

and would have missed two or more days of work per month because of fecal incontinence. (*Id.*) The ALJ gave the opinion little weight, noting that the nurse did not begin treating Plaintiff for irritable bowel syndrome until July 2016 and the medical evidence prior to the date last insured did not support her extreme limitations. (R. 1399.) Plaintiff does not argue that the ALJ's decision to discount Nurse Garcia's opinion was erroneous.

Despite the ALJ's consideration of the state agency opinions and medical evidence, Plaintiff contends that the ALJ did not justify her decision not to include any limitations related to his inflammatory bowel disease in the RFC. He points out that in the prior decision, a different ALJ included a single extra unscheduled break in the RFC. (Pl. Mem. at 5.) But the ALJ here was not obligated to address the prior ALJ's findings "so long as the second ALJ produced a decision supported by substantial evidence." *Rabdeau v. Bisignano*, 155 F.4th 908, 909 (7th Cir. 2025). In this case, substantial evidence supports the ALJ's RFC determination, including the omission of limitations related to Plaintiff's inflammatory bowel disease.

In any event, Plaintiff does not argue that a single extra unplanned break would have been adequate to account for his inflammatory bowel disease even if the current ALJ had included that limitation. In fact, when appealing the prior ALJ's decision, Plaintiff argued that the medical evidence demonstrated that he needed more than one extra 10-minute break per workday. The district court rejected that claim after a

11

thorough review of the medical record, remanding only on a ground related to Plaintiff's complaints of back pain. (R. 1469-70.) That is, the prior district court decision agreed that Plaintiff's inflammatory bowel disease did not render him disabled during the relevant time period. The Court is persuaded that the ALJ's consideration and weighing of the evidence substantially supports the RFC, including its omission of limitations related to Plaintiff's inflammatory bowel disease.

###    C.    The ALJ's Subjective Symptom Analysis was not Patently Wrong

 Plaintiff next argues that the ALJ's evaluation of his subjective symptoms was flawed. Specifically, he contends that the ALJ failed to properly evaluate the evidence in accordance with SSR 16-3p when considering Plaintiff's subjective symptoms. (Pl. Mem. at 7-9.)

When reviewing an ALJ's assessment of Plaintiff's symptoms, this Court "will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute its judgment for the ALJ's determination." *Chavez v. O'Malley*, 96 F.4th 1016, 1021 (7th Cir. 2024) (internal quotations omitted). As long as an ALJ gives specific reasons supported by the record, the Court "will not overturn a credibility determination unless it is patently wrong." *Deborah M. v. Saul*, 994 F.3d 785, 789 (7th Cir. 2021). The Seventh Circuit has even stated that it "would not reverse the credibility determination as long as the ALJ provided at least one reason to support the finding." *Schrank v. Saul*, 843 F. App'x 786, 789 (7th Cir. 2021).

Reading the opinion holistically, as it must, the Court is satisfied that the ALJ's subjective symptom evaluation was not patently wrong. *See Zellweger v. Saul*, 984 F.3d 1251, 1255 (7th Cir. 2021) (decisions must be read holistically; an ALJ's reasoning and citations in one portion of her decision may support conclusions in another portion of the decision). As provided in SSR 16-3p, the ALJ considered objective evidence, Plaintiff's subjective statements, and the medical opinions when determining that Plaintiff's symptoms were not as severe as he alleged and did not preclude his ability to perform all work. For example, with respect to Plaintiff's degenerative disc and joint disease, the ALJ discussed and weighed evidence of back pain, lower extremity pain, and numbness and tingling in Plaintiff's feet against examinations that noted Plaintiff to have a normal gait and no need for an assistive device. (R. 1400.)

Plaintiff argues that the ALJ did not cure errors identified in the prior remand order concerning whether Plaintiff's use of narcotic pain medication or his limited ability to perform certain daily activities supported his allegations of pain. (Pl. Mem. at 7-8.) But the ALJ acknowledged all of the pain medications Plaintiff took, including narcotics and epidural injection, and she discussed their effectiveness (or non-effectiveness) in treating his symptoms. (R. 1395-96.) Moreover, the ALJ here did not rely on Plaintiff's daily activities when evaluating his allegations of pain. So, although the previous remand order faulted the prior ALJ for her evaluation of Plaintiff's activities of daily living, that factor is irrelevant here.

13

Plaintiff also offers a list of findings he says support his subjective complaints regarding pain with movement, decreased reflexes, positive straight leg raising and Faber's tests (Pl. Mem. at 9), but he does not identify any evidence the ALJ overlooked. Throughout the opinion, the ALJ compared evidence supportive of Plaintiff's claims with evidence that undermined it: normal examinations, relief with oral medication, good range of motion, and mild results from diagnostic tests and X-rays. (R. 1396.) Plaintiff's wish that the ALJ weighed the evidence differently is not a ground for remand.

The ALJ also thoroughly considered Plaintiff's allegations of inflammatory bowel disease. As described above, during the relevant period, Plaintiff's few complaints to his doctors were interspersed with many normal examination findings. While Plaintiff testified that he needed to use the bathroom as many as thirty times per day, the ALJ explained that the medical evidence did not support those allegations. As the ALJ pointed out, in July 2016, Nurse Garcia noted that Plaintiff needed to use the bathroom at most 10 times per day, and only during a "flare-up." (R. 1400.)

Plaintiff argues that a need to use the bathroom even ten times per day supports his allegations, but the ALJ plainly considered this evidence for what it was: evidence of Plaintiff's bathroom habits in 2016 when Nurse Garcia began treating his inflammatory bowel disease. Prior to that time, the ALJ noted, Plaintiff often denied having any bowel dysfunction at all. (*Id.*)

14

Finally, the ALJ explained that her RFC determination was more restrictive than the state agency medical opinions. (R. 1400.) She accounted for medication side effects including brittle bones, swelling in his face and neck, and clouded alertness with limitations on climbing and work with vibrating equipment. (*Id.*)

A symptom assessment need not be "flawless," and here it was not "patently wrong." *Simila v. Astrue*, 573 F.3d 503, 517 (7th Cir. 2009) (quoting *Elder v. Astrue*, 529 F.3d 408, 413-14 (7th Cir. 2008)). The Court is able to trace the ALJ's evaluation of specific findings and evidence to support her analysis, and the court declines to hold her to something higher than the governing substantial evidence standard. *See Warnell*, 97 F.4th at 1053 (noting that an ALJ is "subject to only the most minimal of articulation requirements").

## CONCLUSION

For the reasons explained above, the Court grant's Defendant's motion for summary judgment (Dkt. 14) and denies Plaintiff's memorandum in support of remand (Dkt. 10.)

**SO ORDERED.**

**ENTER:**

_Laura K. McNally_

**LAURA K. MCNALLY**
**United States Magistrate Judge**

**DATED: February 13, 2026**